Our first case is case number 417-0239, The People of the State of Illinois v. John Smith. For the appellant, we have Ms. Puente. Is that how you pronounce it? Yes. Okay. And then for the athlete, Ms. Brooks. You may proceed, counsel. Good morning, Your Honors. May it please the Court, counsel. I am Stephanie Puente, from the Office of the State Appellant Defender, on behalf of John Smith. For purposes of today's argument, I will be focusing on the Tony issue, and if time permits, I will briefly touch upon the liability-free issue. As for the issue regarding Georgiana, I will rest on my arguments in my brief, but I'm happy to answer any questions you may have. The question before the Court today is, How many details does the pro-state petitioner, with little to no legal knowledge or training, must allege at first-stage proceedings to make an arguable claim to ineffective assistance of counsel? At trial, John Smith's theory of defense was that he did not sexually assault SN or her older sister. Now, in post-conviction, Smith has identified an occurrence witness, Chloe M., who counsel was aware of, and has described how her testimony would have supported his theory of defense at trial. These factual claims made in the petition, under the lenient pleading standards of Hodges, are sufficient to make a claim of ineffective assistance of counsel for failing to investigate and call Chloe M. to corroborate Smith's defense. He has also stated that counsel should have objected at the 115 hearing regarding the state's failure to call the forensic interviewer to testify about the circumstances surrounding the interviews at the Child Advocacy Center. Once again, under the lenient pleading standards set forth in Hodges, Smith has alleged enough facts to make an arguable claim of ineffective assistance of counsel for failing to object to unreliable hearsay. Therefore, the trial court has erred in the summary of the state's summarily decisions for the petition, and we would ask that the court remand for second-stage proceedings of the appointment of counsel. As for the claim regarding counsel's ineffectiveness for failing to investigate and call Chloe M. to testify, Smith has set forth a sufficient and arguable basis in fact in his post-conviction petition. In his post-conviction petition, he alleged that Chloe was available and not called as a key witness to testify. Although he made this claim, this factual assertion, under the heading of prosecutorial misconduct, he tied his attorney's ineffectiveness for failing to object to Chloe not being called to testify at trial. Furthermore, under the heading where he says, child counsel is ineffective for failing to investigate the crime scene, Mr. Smith talks about how counsel should have gone to the crime scene where defense witnesses were willing to cooperate, including who would have helped produce exhibits in his defense. Chloe M. was one of the defense witnesses who lived at the home where the alleged incident occurred. Furthermore, he said later on in his petition, he said child counsel is ineffective for failing to investigate as necessary to challenge the credibility of SN. Construed liberally, there are sufficient facts in his petition to set forth an arguable claim of ineffective assistance of counsel for failing to investigate and call Chloe not to testify. Now, Chloe's claim was not also rebutted by the record. There is indication in the state's disclosure of discovery that Chloe was interviewed by the Child Advocacy Center in the state that was disclosed to counsel. It did not come in at trial. It did not come in at a pretrial hearing. Therefore, it doesn't indicate that child counsel looked at it, considered the content, and found that it wasn't favorable to the defense. Furthermore, in the motion to reconsider, Mr. Smith attached, well, he hand-wrote and later attached quotations to or excerpts of state comments in closing where the state says, oh, to the jury, you might want to know why we didn't call Chloe out to testify for her mother. And he says in no certain terms that Chloe's mother had decided to testify favorably for Mr. Smith. Therefore, Chloe M. would also testify favorably. Given that, under Hodges, Johnson has identified who should have been called and has provided cooperation for why she should have been called based on the state's comments in closing arguments. There's also an article basis in law. There's no justification that would allow trial counsel, a reasonable trial counsel, for not investigating a witness whose testimony ultimately went to the evidence at heart of the case, which was whether Mr. Smith sexually assaulted Essa and Deanne. Also taken as, he said, taken as true, taken allegations as true that should be required, Smith was also arguably prejudiced by counsel's failure to investigate and call Chloe. At trial, no witness was called to refute Essa's older sister account of the misconduct. She had testified and also stated in her CAC interview that Mr. Smith had touched her inappropriately in the living room of the Myers residence. She said that Chloe was the only other person who had been there with her. If counsel had investigated, he called Chloe to refute any of Deanne's testimony about that incident in the living room. Also, how it was put out at trial, Sarah Myers was impeached in low level. At trial, she had testified that Essa and Deanne had never gone to play in the basement on the date of the alleged incident. Then, the girl's mother was called to rebuttal as well as Sarah Myers' prior inconsistent statement was introduced in which she said Essa and Chloe were in the basement. At that time, counsel, if he had had to investigate, could have called Chloe, the testify, to minimize that impeachment and rebut the impeachment. Therefore, liberally construed, and considering the full context of the themes and the attachments, Smith has made an arguable claim of ineffective assistance of counsel for failing to investigate and call Chloe not to testify. As to the claim regarding the reliability hearing, Mr. Smith has also made an arguable basis in fact. In his petition, he said that trial counsel failed to challenge the content of the CAC interviews. He further said that trial counsel should have argued that the state failed to meet its burden and should have argued that the totality of the circumstances, the timing of the statements, rendered them unreliable. Moreover, in his motion to reconsider, he said the trial counsel has been effective for failing to object at the reliability hearing when the state did not call the forensic interview to testify. So regarding this issue about calling the forensic interviewer, the trial court had the opportunity to review the interviewer, correct? Yes. And so, what case law are you basing your suggestion that there's an obligation to call the forensic interviewer? I'm relying on SWORC, and the reason why is that if you listen to the video, especially SN's video, there's a conversation, or there's, I think there's somebody talking outside of the interview room, right before Ms. Whitaker walks in with SN into the room. And she directs SN to sit at one of the armchairs. Then Ms. Whitaker says, Okay, SN, you remember I told you my name is Mary. Under SWORC, if there was any prior interaction or interviews with the little girl before she gave her statement to the forensic interviewer, there should have been some testimony about that. Without having Whitaker to call, I mean, without calling Whitaker to testify at the hearing, we don't know if that prior conversation was just introductory. Like, did she go out and meet the little girl in the playroom and say, Hello, my name is Ms. Whitaker, are you going to talk to me? Or was there something else that happened? And under SWORC, if there's no evidence about those prior conversations that are introduced, even if the conversation... What was the nature of the prior conversations in SWORC? There was, I believe there was an interview with a police officer and an interview with the two nurses. I realize you're saying that we don't know here, but what in the record suggests that we have anything near that or similar to that? Again, it was because she wasn't called to testify, we don't know what happened before. And this is based on the fact that she said, You remember I told you I'm Mary? Yes. Now, I have a question following up on Justice Holder-White's question, and that is, there is evidence in the record that this Mary, the interviewer, described her training and process of conducting interviews. That is in the record. Right, but that happened at trial. Under the statute, before the court determines whether... Oh, right, right, right. And it falls within the exception of the HEAR standards, the 11015 exception, there needs to be that finding before. That's right. I stand corrected. So that is why. Because she wasn't called before the trial, we would argue that it was arguably causal and ineffective. Moreover, causal deficient performance also arguably prejudiced Mr. Smith because they heard statements made to Whitaker even though the reliability hadn't been established. And it could have... It does undermine our confidence in the outcome of the trial where it was only through Assan's reported CHC interview where she talks about the conduct between Mr. Smith and her products. She did not testify to that at trial. So while the court thought that, without it being found reliable before trial, it could have affected the outcome of the case. If the court has no additional questions... I have a question. Again, it's following up on Justice Holder-White's line of inquiry. And that is, we're sort of... We're trying to suss out where the there-there is. What is it about that statement you referenced with Mary reintroducing herself? What is it about that that causes us to question the court's finding of the time, content, and circumstances or appropriate? That statement makes us question whether...was there some other interview before? This is not like with the end where she could tell at the end, hi, I'm introducing myself to you for the first time, therefore we know there was no conversation before. And that goes back to the fact that although the police officers did not interview the girls before they went to the CHC, they did talk to other people. So if there's an indication of any prior discussion, the burden's with the state... Correct. ...to show that there was no inappropriate coaching. Exactly. Okay. And if you have no further questions, we maintain that Smith's under colleges has stated sufficient facts to make an argument that it's ineffective assistance of counsel. And we ask that this court reverse the summary of the dismissal of his petition and revamp the further second stage proceedings and appointment of counsel. Thank you. You'll have additional time on rebuttal if you so desire. Sure. Ms. Brooks? Thank you, Your Honors. Good morning. My name is Allison Paige Brooks, and I'm here on behalf of the people. May I please the court and counsel? The state's brief had said that the claim that they relied upon about OAM was contained within the December 15, 2016, pleading, which actually came after the October 19, 2016, dismissal of the August 1, 2016, post-conviction petition, which means under the Morrow case, it was not part of the initial petition because the leave to amend can be allowed only prior to the final judgment, and summary dismissal petition constitutes final judgment. So therefore, leave from even a leave to amend cannot have been granted, even if it had happened, but there has not... I'm not sure if there was any leave to amend even granted in this record, but essentially, this would mean that the December 15, 2016, pleading was actually in the nature of a successive post-conviction petition, which requires leave to be filed in terms of the cause and prejudice test, and in which there's no motion for leave to file, and there's no leave granted, and the state also questions whether that December 15, 2016, pleading was part of the judgment that is on appeal, of which this court could review, the judgment being the October 19, 2016, dismissal of the August 1, 2016, petition. So therefore, it would be incumbent on the defendant to show that there was the gist of an article in meritorious claim related to Chloe M. and ineffective assistance of counsel that was stated in the August 1, 2016, petition. And I would have to defer to this court's reading of that August 1, 2016, petition to see whether such a claim was... the gist of such a claim was alleged in light of the liberal pleading standard according to pro se post-conviction petitions. But to the extent that they rely on the December 15, pleading, the state believes that is not appropriate because it was not included in the original petition that was dismissed. With respect to the allegation of the Mary Whitaker's not being called to testify in the 11510 hearing, this hearing was held through the defense of stipulation, which could be applied for the purpose so that the hearing could be conducted without the need for Mary Whitaker to testify. The defendant claims ineffective assistance, which means that if defense counsel had not stipulated to the conduct of a hearing without the witness Mary Whitaker having to testify, the state could have called Mary Whitaker to testify. So if the defendant's allegation of prejudice is, well, if the state had really just objected to the fact that this hearing was concluded without Mary Whitaker's testimony, there's a reasonable probability the court would have declined to admit the hearsay of this that the state sought to admit through its 115-10 motion. However, that is to mean that the state would have not presented Mary Whitaker to testify if instead of stipulating to the conduct of a hearing without Whitaker's testimony, the defendant insisted on Whitaker to testify. So either way, it's not... It's not arguable that somehow this hearsay would have not been admitted on the basis of the lack of Whitaker's testimony because the state could have simply corrected that, any objection by saying, oh, wait a minute, Your Honor. They agreed to do this without Whitaker's testimony. Now they're objecting. We need to get Whitaker in here. And the court could have almost certainly withheld ruling until they had given the state an opportunity to present Whitaker's testimony if they had proceeded procedurally in that fashion. Or if there had never been a stipulation, the state would have just simply called Whitaker in its own case at the 115-10 hearing. And the stipulation here, a fair and accurate, it seems to be the defense is sort of stuck with that in arguing now that the recording wasn't fair and accurate because there was some sort of pre-interview interview in which suggestive questions had been asked. But they stipulated that this recording was fair and accurate. This was a recording of the interview. So it leaves no room, essentially, for the related allegation that somehow there had been suggestive questions that occurred off-camera because that would make the recording not complete, which would no longer be fair and accurate, which was the stipulation. So they can't get past the stipulation. So therefore, as a matter of fact, a factual matter,  that this recording was not fair and accurate because they're bound by that stipulation. So therefore, the Zord case dealt with actual prior interviews. It's listed in the recordings that Whittaker introduces herself to the girls on the actual recording. And so to the extent there might have been some conversation in the hallway leading up to the interview room, there's nothing suggestive in that in terms of prompting them to allege sexual touching by the defendant. So there's not an arguable case that this would have prompted the trial court to not allow the hearsay to be admitted under 115-10. So for those reasons, the state would request this court to affirm the dismissal and entertain any questions. Well, what about this issue of the failure to impeach? Oh, yes. This is Jordina? Yes. Okay. Okay, with respect to Jordina... One of the issues with this is the allegation that she, quote, lost custody doesn't necessarily mean that the state had any leverage with her. The trial testimony that she said that the girls were residing with relatives on a temporary basis, that could be by agreement, without any state juvenile court involvement. In other words, to reconstitute evidence of bias and to actually constitute a matter where she could be impeached, not that she doesn't have her children with her, is not going to bias in terms of she has an interest in order to testify favorably for the state. Now, arguably, that could happen if the state had filed a petition of her neglect and removed custody from her, they would have leverage. So do we know if that was the case? Not in this record. And isn't that the problem? It wasn't alleged in the petition that... I mean, if we construe the petition liberally, it sounds like you agree that if the situation is one where the state had custody or DCFS had custody and guardianship of her children and she was at the mercy of the state in terms of whether or not she would have her children returned to her, that that would be an impeachable issue. Do you agree with that? Yes, that part... If there had been state involvement. The question of whether this petition can be so liberally construed to show with evidentiary support as required at the first stage of post-conviction proceedings that there had been state involvement in the removal of custody. The lost custody is in a sort of like... sort of like passive voice where it doesn't really say who the actor is. So there's no allegation of state involvement that's been made here. And so to the extent it should be liberally construed, it does not... I'm not sure it's fair inference that there was necessarily state involvement in this, especially when her trial testimony was that they were temporarily residing with relatives. It wasn't... Well, I mean, we know from prior experience of those seated on the bench that DCFS can place your kids with your family. They can place them with, you know, foster... traditional foster family. So I don't really quite understand what the fact that they were temporarily placed with relatives, how that necessarily diminishes the possible inference that the state had custody of her children. Right, and I agree with that. But the reason, essentially, is that the record does not foreclose a claim of state involvement. So it's not likely to scribble us because it was completely rebutted by the record. But there's not a sufficient allegation of state involvement that would mean that this actually constitutes evidence of bias rather than just simply trying to dirty a witness by claiming that she must be a bad mother or something because she doesn't have custody of her children, which is not... It doesn't go to impeachment on the ground of the state has leverage over her, which is a completely different theory. And this one is not sufficiently alleged and supported in the petition. In other words, the evidentiary support for such an allegation, there has to be some sort of record, perhaps like a court document, showing, like, a copy of the petition if there was a state petition. And I'm not aware of any. I have not researched specifically... Which, of course, a pro se defendant wouldn't have any access to that because those files aren't just available to anyone, correct? That's true. But that could be an allegation that such support is not available. In either way, a pro se petition has to contain either the allegation that... contain the evidentiary support or an explanation for why. So if he had alleged that there had, in fact, been a court proceeding but him being incarcerated pro se and that these records are subject to confidentiality, he could have explained all that and said, well, I cannot present a copy of the state's neglected petition because of all these reasons. And that is his burden under the Constitutional Hearing Act to make an explanation for why his supporting document is not attached. So there's no indication here that even if he had alleged this, that it would be capable of objective corroboration, that his counsel could have presented some sort of impeachment on this basis at trial. And that's not something that's either been affirmatively alleged to a specific enough degree, even liberally construed, or that it's not been a matter that has been supported adequately for the explanation of why it is required. Can I offer something? You seem to be putting the burden on the pro se litigant, wherein he's alleging ineffective. Isn't the burden on counsel to investigate? Well, if this is an impeachment matter, it might be something that could have been disclosed in discovery. I'm not sure because it's not in the record. I'm not sure on the way that counsel could have ascertained whether there had been any confidential juvenile court proceedings filed other than she says at trial, my kids are residing elsewhere, and maybe he could have asked the question, but then it begs the question of whether a defense attorney should ask questions they don't know the answers to during the middle of the trial. So, I mean, the defense counsel is not in an easy position here. I'm not sure how it could have been ascertained before trial. No filing a motion asking the court for leave to review that file? During the trial? If there had been... I'm saying defense counsel could have done that. A defense counsel during the trial could have said... No, prior to trial. Oh, prior to trial. If the defense attorney had been aware of a court proceeding, then yes, there could have been perhaps some sort of way of accessing that. Or even suspicious that one may exist. I mean, would you agree that defense counsel wouldn't have to know definitively that there was such a proceeding, but if there is a question, certainly they could go to the trial court and ask. Right, but I'm not sure of any indication that defense counsel would have known. And as such, I'm not sure a defense attorney... Like, for example, in the ordinary case, the defendant would say, I told my attorney about this, and he didn't look it up, he didn't follow through. There'd have to be something in the petition that shows that the defense attorney would have had access to this information at court trial inside of an investigation. I'm not sure if that's in the petition. But it's alleged here, and the question is whether or not it's just a constitutional claim and how ineffective allegations are. It has to be an arguably meritorious claim. So one problem with this also is there's no arguable prejudice. I mean, the allegations were made by S.N. and B.N. That was their testimony. And I think in their briefing they talk about a conscious credibility between the defendant and his denial at trial and S.N. and B.N.'s accusations. Georgina N., she provides some sort of relevance because... But she's not an occurrence witness. You know, she's a witness to the initial outcries, but then they're also... They have reported statements that were presented at trial where she's not in the room, only a forensic interviewer, and no suggested leading questions, and they make these accusations. So Georgina N. is not... It's not arguable that the defendant would have been acquitted had he simply questioned Georgina N. at trial. Oh, by the way, you have a pending court case and a juvenile court number and that's why you lost custody of your children. Isn't that true? If that could have been asked of her, she could have also been rehabilitated because she testified at the 115-10 hearing and she also took the children to the police station the day after the outcry while she's still in custody. So, I mean, these accusation statements are coming in. The idea that she somehow is making this up in order to free a family estate who has some sort of control or custody of their children, that is the allegation. That's not even arguably close to being arguable that this jury might have acquitted the defendant but for the claim that... Is that a test for us? It is arguable. It has to be arguably meritorious and to constitute prejudice under Strickland, it has to be a reasonable probability. So arguably reasonable probability, under the first stage frivolous standard, is it an arguably reasonable probability that but for the counsel's failure to impeach Georgina N. as to let's just assume there had been a pending juvenile court matter which Custis leveraged, the jury would have found a reasonable doubt and acquitted him. The evidence was from... You're making that argument based upon that the testimony from the victims was similar to what they conveyed to Whitaker. Yes. And the video was played for the jury. Yes. Okay. And you're saying that would overcome any prejudice even if Georgina, is that her name? Yes. Had been impeached. If she had been impeached, they could have rehabilitated her with a prior consistent statement that existed before the leverage, alleged leverage, would have arisen. And so she's taken the girls the day of or after the outcry and she's testified in a pretrial 115-10 hearing prior testimony, prior statements. If they are before the existence of the alleged bias, then they could be admitted as prior consistent statements and that would rehabilitate the credibility of that witness who's not even the main witness. She's not an occurrence witness. To say that this is arguably a reasonable probability that he would have been acquitted but for this lack of impeachment on this one topic is not something that, I mean, it is patently without merit. That's what the state petition is. Now, Ms. Brooks, refresh my memory. I'm trying to recall from the record, and this may have just been something alleged in the petition, but weren't there allegations that Georgina had it out for the defendant that they had had some type of dispute and she indicated that she intended to get back at him? It might have been an allegation. I don't remember. I think there was some sort of argument maybe, perhaps. And that would have occurred prior to the children being taken to the center and prior to the interviews and prior to the alleged statements. You mean other evidence of bias, for example, that was already in the record? Right. I'm not sure how much the jury would have already heard about her dislike for the defendant, for example. There may have already been in existence some evidence of bias that the jury would have heard, which would mitigate the idea of leverage mattering so much that it might cause the jury to... Well, I guess the way I'm kind of trying to look at the totality of the circumstances is if, you know, it makes a difference if you say, well, this person, you know, we had a falling out and she said I'm going to get you or whatever and then the children were taken and these statements were made. To me, it just adds to what bias and what basis there might be for her to testify, Georgina, to testify in a certain way. I mean, you know, on one hand you could say well, she had it out for him and she coached her girls into making these statements and then while this is pending, the state took her children and that gave her even more reason to stick by the story that she had developed and to testify in the way that the state wanted her to testify so that she can get her girls back. I mean, is that one way it would be reasonable to look at it? As evidence of existing, as extra... Well, I'm just saying to me it somewhat diminishes your argument that she could have been rehabilitated with a prior consistent statement because now there is evidence that there may be a reason that statement was made. Okay. I see what you're saying, Your Honor. But also the other side of that I was trying to make the point of is that to the extent that the jury already heard other evidence of bias, for example, additional evidence of bias isn't going to make as much of a difference in the outcome, likely difference in the outcome, because the jury would have already heard some evidence of bias. If they did, I'm not sure if that's true. But I'm just saying, if they had heard evidence of bias, further evidence of bias would be less likely to make a difference in the outcome. Thank you. Thank you. Any rebuttal, Ms. Puente? Your Honor, as to the issue regarding the trial custody proceeding, all that Mr. Schmitz has alleged is that counsel failed to investigate. And he said on, I believe it's page 312, the base stamp of the case, that he told his attorney about George O'Neill losing custody, and that he was aware of it. And all he wanted was simply to investigate whether, were these DCFS proceedings to happen as soon as the girls made their ARCRA? Was it before? There's no information of that. And that would also go into whether she had personal disliking for Mr. Schmitz. And if the proceedings took place before the girls went to talk to the CAC, and before, then there might be also a possibility that Georgina could have had a bias to manipulate the girls. In the 11510 hearing, where she did testify, the court found that two of the outcry statements made by Assett and Behan, when they were outside of, I think, Georgina's boyfriend's trailer home, did not have the sufficient reliability, safeguards of reliability to be admissible. Therefore, it was incumbent upon her to investigate, get those documents, to see if there was anything there that could have further impeached not only Georgina, but could have also refuted the reliability of Assett Now what about what I was asking opposing counsel about as far as some type of beef or disagreement that existed prior to the girls going and making the statements and being interviewed? Yes. There was a fight at least the weekend of  that there was at least what came out of trial was that there was a beef between Georgina and Mr. Smith and like most variables of the state, the facts of the trial show that Smith had possibly gotten into an argument with his girlfriend Sarah Myers and that Georgina was standing up to him and trying to defend her friend and her boyfriend was also there, everybody got into this argument and she said, I'm coming after you, I'm not going to let this stand. So that happened before the girls were taken to the CAC for their interview and even before they went to the police station. As to the claims regarding the clothing, we maintain that the record shows that the December 2016 clothing was a supplement and that's how the court construed it. It was a supplement to the motion to reconsider. I have a question. Ms. Brooks argued that there was no evidentiary support showing state involvement regarding the custody and she's also argued that there's no explanation why there are no supporting documents. What's your response to that? The state is improperly inviting this court to apply more stringent standards for first-stage PC petitioners and it's just asking you to properly rule on the credibility determinations that are inappropriate at this stage. All he said was trial counsel was ineffective to investigate this information I gave him. Part of that investigation would have disclosed what the state involvement was there. Is that enough? Yes, under the lenience of pleading standards of Hodges, he has cited So you disagree that there either has to be supporting documentation or an explanation why there isn't? Yes, he explained why he couldn't get it. He said because he was incarcerated and because the LA Supreme Court rule prohibited him from having discovery, he wasn't able to go through these documents or to attach any further supporting documentation. If your honors have no further questions, we would ask that you reverse the summary as a result of the petition and confirm your second-stage PC Thank you, counsel. We'll take this matter under advisement and be in recess at this time.